In re Petition for DISCIPLINARY ACTION AGAINST Jay Gerard SWOKOWSKI, a Minnesota Attorney, Registration No. 199710.

No. A10–1756.

Supreme Court of Minnesota.

April 27, 2011.

---

**1.** To the extent that *Hoemberg* holds otherwise, it is overruled.

Martin A. Cole, Director, Craig D. Klausing, Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, Minnesota, for petitioner.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) petitions our court to take disciplinary action against respondent Jay Gerard Swokowski, a Minnesota lawyer. The Director alleges that Swokowski: (1) committed forgery and misappropriated client funds in violation of Rules 8.4(b) and (c) of the Minnesota Rules of Professional Conduct (MRPC); (2) failed to notify clients of his suspension in violation of Rule 26, Rules of Lawyers Professional Responsibility (RLPR), and Rule 3.4(c), MRPC; (3) engaged in a pattern of neglecting client matters, failing to communicate, and failing to return client property, in violation of Rules 1.3, 1.4(a) and (b), and 1.16(d), MRPC; (4) failed to pay a law-related judgment in violation of Rule 8.4(d), MRPC; and (5) failed to cooperate in the Director's investigation of these matters in violation of Rule 8.1(b), MRPC, and Rule 25, RLPR. Swokowski failed to respond to the petition for disciplinary action, and the Director moved our court for summary relief ordering that the allegations in the petition be deemed admitted and that Swokowski be disbarred. We deemed the allegations in the petition admitted and ordered Swokowski to show cause why he should not be disbarred. Swokowski has failed to respond to the order to show

cause and, based on our review of the admitted facts, we conclude that Swokowski's conduct warrants disbarment.

Swokowski was admitted to practice law in Minnesota in 1989. In June 2009, we suspended Swokowski from the practice of law for 90 days, effective June 25, 2009. *In re Swokowski*, 767 N.W.2d 3, 3 (Minn. 2009). The suspension stemmed from Swokowski's failure to maintain the appropriate books and records for his lawyer trust account, adequately communicate and act diligently on his clients' behalf, and properly handle a client's retainer. *Id.* This behavior constituted a violation of Rules 1.3, 1.4(a)(3) and (4), 1.15(a) and (c)(5), 5.5(a), and 8.1(b), MRPC, and Rule 25, RLPR. *Swokowski*, 767 N.W.2d at 3. Swokowski never applied for reinstatement to the practice of law.

The facts deemed admitted, as alleged in the petition, are as follows.

### Count One—Forgery and Misappropriation of Client Funds

#### J.F. Matter

In June 2008, J.F. retained Swokowski to represent him on a contingency fee basis in a personal injury claim arising out of an automobile accident. In June 2009, J.F. agreed to settle the claim for $1,000. The insurer sent a check to Swokowski, made payable to "[J.F.] AND HIS AT-TORNEY OF RECORDS [sic] SWOKOW-SKI LAW OFFICE, ONLY." Swokowski endorsed the check by signing J.F.'s name without J.F.'s knowledge, and deposited the check into an unknown bank account. He never paid any of the proceeds of the settlement to J.F. The Director alleges that Swokowski's forgery of J.F.'s signature on the settlement check and misappropriation of the settlement funds violated Rules 8.4(b) and (c), MRPC.[1]

### Count Two—Failure to Comply with Rule 26, RLPR

Swokowski was suspended from the practice of law on June 11, 2009, effective June 25, 2009. *Swokowski*, 767 N.W.2d at 3. Swokowski failed to notify three of his clients of his suspension as required by Rule 26, RLPR. He also failed to submit an affidavit to the Director demonstrating compliance with Rule 26's notification requirements, identifying the jurisdictions in which he was licensed to practice law and providing the Director with an accurate mailing address. The Director wrote to Swokowski twice, reminding him of his compliance obligations. Swokowski failed to respond to either letter and never submitted the required affidavit. On August 11, 2009, the Director filed an affidavit of noncompliance with our court. The Director alleges that Swokowski's conduct in failing to comply with Rule 26, RLPR,[2] violated Rule 3.4(c), MRPC.[3]

---

1. Rule 8.4(b), MRPC, provides that it is professional misconduct to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Rule 8.4(c), MRPC, provides that it is professional misconduct to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

2. Rule 26(b), RLPR, provides that a suspended lawyer must notify clients, opposing counsel, and any tribunals before which the lawyer is involved in pending litigation of the lawyer's suspension. The lawyer must also re-turn all client property, Rule 26(d), RLPR, and file an affidavit with the Director demonstrating compliance with the rule, notifying the Director of all jurisdictions in which the lawyer is licensed to practice, and an address where communications may be directed, Rule 26(e), RLPR.

3. Rule 3.4(c), MRPC, provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

*Count Three—Pattern of Neglecting Client Matters, Failing to Adequately Communicate with Clients, and Failing to Return Client Property*

### C.W. Matter

In December 2008, C.W. retained Swokowski to represent her in a marriage dissolution proceeding and paid Swokowski a $2,000 retainer fee. On January 6, 2009, opposing counsel served Swokowski with discovery requests. Swokowski never responded to the discovery requests despite having the necessary information. Swokowski attended a hearing in the case on January 9, 2009, but failed to take any further action on his client's behalf. In March 2009, Swokowski received a proposed marital termination agreement from opposing counsel. He forwarded the proposed agreement to C.W., but failed to respond to numerous requests from C.W. to discuss it with her. C.W. terminated Swokowski's representation on May 8, 2009.

### P.F. Matter

In October 2008, P.F. retained Swokowski to represent her in the dissolution of her marriage. P.F. paid Swokowski a $2,500 cash retainer fee and signed a retainer agreement. Swokowski asked P.F. to assemble some documents and bring them to his office. But when P.F. arrived at the scheduled time for the appointment, Swokowski's office was empty. P.F. waited for over an hour and a half, but no one arrived. P.F. also left many telephone messages for Swokowski, which Swokowski failed to return. Swokowski did prepare and serve a petition for dissolution of marriage on P.F.'s husband. Swokowski also attended a meeting with P.F.'s husband to discuss the division of the marital estate, but failed to discuss the division of assets with P.F. beforehand. Swokowski informed P.F. by letter dated June 18, 2009, that he was withdrawing from representation.

### L.A. Matter

On June 4, 2008, L.A. retained Swokowski to represent him in expunging a misdemeanor conviction for domestic abuse. L.A. signed a retainer agreement and paid Swokowski a $2,500 retainer fee, which by the terms of the agreement was to cover all work necessary to complete the matter. Swokowski obtained a copy of the conviction to be expunged and an affidavit from the victim of the alleged assault, but did not take any more steps to resolve the matter. Swokowski did not attempt to present the matter to any court and failed to return most of L.A.'s telephone messages.

After Swokowski was suspended from the practice of law, he informed L.A. of the suspension and recommended that L.A. retain substitute counsel. Swokowski also told L.A. that he would forward the balance of the retainer to L.A.'s new counsel. Indeed, L.A.'s new counsel was waiting for receipt of the retainer before commencing work on the file. Despite several reminders and requests, Swokowski never forwarded the retainer balance to L.A. or his new counsel.

### R.C. Matter

Swokowski represented R.C. in a marriage dissolution proceeding. On January 15, 2009, R.C. retained Swokowski to prepare two qualified domestic relations orders (QDROs) that were required by the judgment and decree entered in R.C.'s marriage dissolution proceeding. R.C. did not sign a retainer agreement, but paid a $1,500 retainer fee. Despite receiving many phone messages from R.C., Swokowski did not communicate with R.C. until May 2009, when R.C. visited Swokowski's office unannounced. Swokowski told R.C. that he had completed the QDROs and would submit them the next day. R.C.

reviewed the QDROs and discovered that they were improperly prepared. Swokowski never corrected the errors, never submitted them as required, or otherwise completed the work for which he had received the $1,500 retainer. Swokowski also did not give R.C. notice of his suspension from the practice of law.

### C.B. Matter

On February 11, 2009, C.B. retained Swokowski to represent her in a marriage dissolution proceeding, paying a $2,500 retainer fee. Swokowski prepared a summons and petition for dissolution and served them on C.B.'s husband, but took no further action on C.B.'s behalf. Swokowski never informed C.B. of his suspension. Swokowski also failed to respond to C.B.'s requests for the refund of $2,000 of her retainer and for return of her original petition for dissolution of marriage and the affidavit of service. The petition as drafted contained numerous errors, requiring C.B.'s new attorney to re-draft and re-serve it.

### J.M. Matter

On October 1, 2008, J.M. retained Swokowski to represent him in his marriage dissolution proceeding, paying a $2,350 retainer and signing a retainer agreement. Swokowski prepared and served a petition for dissolution of marriage on J.M.'s behalf. The petition contained several errors, the most significant of which was a failure to allege that J.M.'s wife had hidden approximately $50,000 in income. The

petition also failed to specify the amount of requested parenting time. Swokowski met once with opposing counsel, but did not take any further action on J.M.'s behalf. Finally, Swokowski failed to return numerous telephone messages from J.M.

### J.F. Matter

During his representation of J.F., Swokowski failed to return numerous telephone calls and failed to communicate with him regarding his case.

The Director alleges that Swokowski's pattern of neglect of client matters, failure to communicate, and failure to return client property as detailed in count 3 violated Rules 1.3,[4] 1.4(a) and (b),[5] and 1.16(d),[6] MRPC.

### Count Four—Failure to Pay Law-Related Judgment

M.H. provided court-reporting services to Swokowski on November 9, 2007, for which he charged Swokowski $463. Between November 21, 2007, and January 15, 2009, M.H. sent Swokowski seven bills for this charge, each of which went unpaid. Eventually, M.H. obtained a judgment against Swokowski for the unpaid bill and the court fee, totaling $523. Swokowski failed to pay this judgment. The Director alleges that Swokowski's failure to pay this judgment violated Rule 8.4(d),[7] MRPC.

### Count Five—Failure to Cooperate in the Director's Investigation

The Director sent notices of investigation of the complaints of C.W., P.F., L.A.,

---

4. Rule 1.3, MRPC, provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

5. Rule 1.4(a)(3)-(4), MRPC, provides that a lawyer must keep a client reasonably informed and respond to client requests for information.

6. Rule 1.16(d), MRPC, provides that, upon termination of representation, "a lawyer shall take steps to the extent reasonably practicable

to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fees" that has not been earned.

7. Rule 8.4(d), MRPC, provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

and R.C. to Swokowski at his business address in Anoka. None of these notices were returned as undeliverable, but the Director did not receive a response to any of the notices. The Director then sent the notices to what the Director believed to be Swokowski's residential address in Anoka. The Director's letter was returned on August 31, 2009, with the handwritten notation: "Does not Live Here. Never Has. Return to Sender." After receiving complaints from C.B., J.M., J.F., and M.H., the Director sent notices of investigation of those complaints to Swokowski's business address. Those notices were returned as undeliverable.

The Director subsequently located an address for Swokowski in Andover, Minnesota, and on March 5, 2010, mailed notices of investigation to this address. These notices were eventually returned with the notation: "Return to Sender, Refused, Unable to Forward." The Director alleges that Swokowski's failure to respond to the notices constitutes noncooperation in violation of Rule 8.1(b),[8] MRPC, and Rule 25,[9] RLPR.

In preparation for the filing of the petition for disciplinary action against Swokowski, the Director asked Metro Legal Services (Metro Legal) to locate a current address for Swokowski. Metro Legal confirmed through Swokowski's credit information, driver's license, vehicle registration, and utility service information that Swokowski resided at the Andover address. On August 7, 2010, a Metro Legal employee attempted to serve the petition for disciplinary action on Swokowski. When he arrived at the Andover address, the employee spoke with a young man who identified himself as Swokowski's nephew.

The young man confirmed that Swokowski resided at the address, but said that Swokowski was not at home. It does not appear, however, that the employee attempted to serve the petition for disciplinary action by leaving it with the young man.

On August 24, 2010, another Metro Legal employee again attempted to serve Swokowski with the petition at the Andover address. The employee knocked on the door at the Andover address and through the window he saw a person who he believed to be the same young man seen at the time of the August 7 attempt. The young man saw the Metro Legal employee and hid inside the home. The employee then announced that he was going to leave copies of the petition for disciplinary action in the door of the home, and did so. The Director subsequently published notice of the disciplinary action against Swokowski in Finance and Commerce, a legal newspaper, for three consecutive weeks, beginning October 13, 2010, and ending October 27, 2010. The petition was filed with our court on October 7, 2010.

On November 24, 2010, the Director filed a motion for summary relief, alleging that Swokowski had failed to respond to the petition for disciplinary action within the 20–day deadline established by Rule 13(a), RLPR, and requested that we order that the allegations in the petition be deemed admitted. By order dated December 2, 2010, we ordered that the allegations in the petition be deemed admitted and ordered Swokowski to show cause why he should not be disbarred. Swokowski has not responded to our order to show cause.

---

8. Rule 8.1(b), MRPC, provides that a lawyer must respond to requests for information during a disciplinary investigation.

9. Rule 25(b), RLPR, provides that failure to cooperate with the Director's investigation constitutes an independent ground for discipline.

■ We have said that "'the attorney must be afforded an opportunity to anticipate, prepare and present a defense.'" *In re Garcia*, 792 N.W.2d 434, 441 (Minn. 2010) (quoting *In re Gherity*, 673 N.W.2d 474, 478 (Minn.2004)). Under Rule 12(b), RLPR, a petition for disciplinary action should be served upon a respondent "in the same manner as a summons in a civil action." The Director served Swokowski by publication pursuant to Minn. R. Civ. P. 4.04, which provides that service by publication is sufficient to confer jurisdiction when the defendant "remains concealed" within the state with intent "to avoid service." Because Swokowski refused inquiries sent by mail to his Andover address, and failed to respond to papers left at the address, it appears that Swokowski is "concealed" within the state with intent to avoid service.

Service by publication may be effected by publishing notice for three weeks and filing with the court an affidavit stating "that affiant believes the defendant is not a resident of the state or cannot be found therein, and either that the affiant has mailed a copy of the summons to the defendant at the defendant's place of residence or that such residence is not known to the affiant." Minn. R. Civ. P. 4.04(a). Here, the Director published notice of service for three weeks and filed an affidavit that stated that Swokowski was concealed within the state with intent to avoid service and that summons had been mailed to Swokowski's address. Therefore, we are satisfied that Swokowski received sufficient notice of the Director's petition for disciplinary action under Rule 12(b), RLPR.

Because the allegations contained in the petition are deemed admitted, there are only two issues before this court: (1) whether Swokowski's conduct, as alleged in the petition for disciplinary action and as deemed admitted by our December 2, 2010, order, violated the Rules of Professional Conduct; and (2) what, if any, is the appropriate discipline for his misconduct.

## I.

We first examine whether Swokowski's conduct, as alleged in the petition for disciplinary action and as deemed admitted, violated the Rules of Professional Conduct.

### Count One

■ The Director alleges that Swokowski's conduct in forging J.F.'s name on a settlement check and misappropriating the check proceeds violated Rule 8.4(b) and (c), MRPC. We agree. Rule 8.4 provides, "It is professional misconduct for a lawyer to ... (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Under Minn.Stat. § 609.631, subd. 2(2) (2010), a person commits a criminal act when he "falsely endorses or alters a check so that it purports to have been endorsed by another." We have recognized that forgery reflects adversely on an attorney's honesty. *In re Berg*, 741 N.W.2d 600, 606 (Minn.2007). The admitted facts establish that Swokowski signed J.F.'s name on a settlement check without J.F.'s knowledge or authorization and misappropriated J.F.'s share of the proceeds. We conclude that Swokowski's conduct violated Rules 8.4(c) and (d), MRPC.

### Count Two

■ The Director alleges that Swokowski violated Rule 3.4(c), MRPC, and Rule 26, RLPR, by failing to notify his clients of his 2009 suspension. We agree. Rule 3.4(c), MRPC, provides that "[a] lawyer shall not ... knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion

that no valid obligation exists." Rule 26(b), RLPR, provides that a lawyer who is suspended must notify his clients, opposing counsel, and tribunals before which client litigation is pending. The admitted facts establish that Swokowski failed to notify R.C., C.B., and J.F. of his suspension. Moreover, the record establishes that Swokowski failed to submit an affidavit complying with the requirements of Rule 26, RLPR. Therefore, we conclude that Swokowski violated Rule 26.

■ Rule 3.4(c), MRPC, provides that a lawyer shall not knowingly violate an obligation under the rules of a tribunal. We have said that failure to comply with the requirements of Rule 26, RLPR, when specifically required by an order of this court constitutes a violation of Rule 3.4(c). *See In re Redburn,* 746 N.W.2d 330, 336 (Minn.2008) ("Redburn violated Rule 3.4(c) because the August 2005 suspension order specifically required him to comply with the requirements of Rule 26, RLPR."). By order dated June 2009, we ordered that Swokowski comply with the requirements of Rule 26, RLPR. *See Swokowski,* 767 N.W.2d at 3–4. On the record before us, we conclude that Swokowski knowingly violated Rule 26, RLPR, by failing to notify R.C., C.B., and J.F. of his suspension and thereby also violated Rule 3.4(c), MRPC.

*Count Three*

■ The Director alleges that Swokowski's pattern of neglecting client matters, failing to adequately communicate with clients, and failing to return client property violated Rules 1.3, 1.4(a) and (b), and 1.16(d), MRPC. We agree. Rule 1.3, MRPC, provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." The admitted facts show that Swokowski did not act with reasonable diligence and promptness on behalf of many of his clients. He failed to

respond to discovery requests or file an answer on behalf of C.W. He took no action to file L.A.'s matter with the court and took five months to prepare R.C.'s QDROs. We therefore conclude that Swokowski violated Rule 1.3, MRPC.

Rule 1.4(a), MRPC, provides that a lawyer shall keep a client informed with respect to important decisions and circumstances that require client consent, keep a client reasonably informed about the status of a matter, and comply with requests for information. Rule 1.4(b), MRPC, provides that a lawyer shall "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The admitted facts establish that Swokowski failed to keep his clients informed and failed to comply with their requests for information. Swokowski failed to respond to repeated phone messages left for him by C.W., L.A., R.C., J.M., and J.F. Moreover, Swokowski failed to respond to repeated requests from C.W. to discuss the proposed marital termination agreement submitted by opposing counsel. Swokowski also failed to meet with P.F. to discuss division of assets before meeting with P.F.'s husband and his counsel. Therefore, we conclude that Swokowski violated Rules 1.4(a) and (b).

■ Rule 1.16(d), MRPC, provides that: Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fees or expenses that has not been earned or incurred.

The record establishes that Swokowski failed to return the unpaid balance of

L.A.'s retainer, failed to return C.B.'s file, and failed to return the unused balance of C.B.'s retainer. Thus, we conclude that Swokowski's conduct violated Rule 1.16(d), MRPC.

*Count Four*

■■ The Director alleges that Swokowski's failure to pay the judgment entered against him violated Rule 8.4(d), MRPC. We agree. Rule 8.4(d), MRPC, provides that it is professional misconduct for an attorney to "engage in conduct that is prejudicial to the administration of justice." Failure to pay a professionally incurred debt constitutes conduct prejudicial to the administration of justice. *See In re Stanbury,* 561 N.W.2d 507, 510 (Minn. 1997) (concluding that attorney's failure to pay any portion of a practice-related debt after final judgment was entered against him violated Rule 8.4(d)). The admitted facts show that Swokowski received court reporting services for which he failed to pay, despite receiving several bills, and also failed to pay following entry of judgment against him. Therefore, we conclude that Swokowski violated Rule 8.4(d), MRPC.

*Count Five*

■ The Director alleges that Swokowski's failure to cooperate in the Director's investigation violated Rule 8.1(b), MRPC, and Rule 25, RLPR. Again, we agree. Rule 8.1(b), MRPC, provides that "a lawyer ... in connection with a disciplinary matter, shall not ... knowingly fail to respond to a lawful demand for information from [a] disciplinary authority...." Rule 25, RLPR, similarly provides that a lawyer must respond to reasonable requests for information. Here, the admitted facts show that the Director sent notices of investigation to Swokowski's business address in Anoka that were not returned as undeliverable,

but to which Swokowski never responded. The Director's correspondence to the Andover address was refused. Rule 26, RLPR, and our June 2009 suspension order required Swokowski to provide the Director with an address to which future communications could be sent. Because Swokowski failed to provide such an address, he cannot argue that the Director's correspondence was directed to the wrong address. Therefore, we conclude that Swokowski's failure to respond to the Director's requests for information constituted a violation of Rule 8.1(b), MRPC, and Rule 25, RLPR.

## II.

■ Responsibility for determining an appropriate sanction rests with our court. *See Garcia,* 792 N.W.2d at 443 (citing *In re Grigsby,* 764 N.W.2d 54, 62 (Minn.2009)). In determining the appropriate sanction, we consider several factors: " '(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession.' " *Garcia,* 792 N.W.2d at 443 (quoting *Grigsby,* 764 N.W.2d at 62). We impose sanctions "on a case-by-case basis, considering the specific acts of misconduct and any aggravating or mitigating circumstances, while looking to similar cases for guidance." *In re Brooks,* 696 N.W.2d 84, 88 (Minn.2005). The Director argues that Swokowski's conduct warrants disbarment. We agree.

*Nature of the Misconduct*

We have said that misappropriation of client funds alone " 'is particularly serious misconduct and usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors.' " *Garcia,* 792 N.W.2d at 443 (quoting *In re Rhodes,* 740 N.W.2d 574, 579 (Minn.2007));

*see also In re De Rycke,* 707 N.W.2d 370 (Minn.2006); *In re Swerine,* 513 N.W.2d 463, 466 (Minn.1994). Because Swokowski has failed to respond to any of the Director's filings in this case, he has not pleaded any mitigating circumstances. Moreover, no mitigating circumstances appear from the admitted facts.

We have also said that repeated instances of client neglect may result in disbarment or indefinite suspension. *In re Flanery,* 431 N.W.2d 115, 118 (Minn.1988); *see also Rhodes,* 740 N.W.2d at 578; *De Rycke,* 707 N.W.2d at 374. Here, Swokowski repeatedly failed to take action on behalf of his clients and ignored their attempts to communicate with him about their cases.

*Cumulative Weight of the Disciplinary Violations*

■■■■■ Even if no single act standing alone warrants severe discipline, multiple rule violations may compel discipline more severe than any single act would warrant. *Garcia,* 792 N.W.2d at 444; *see also In re Oberhauser,* 679 N.W.2d 153, 160 (Minn. 2004). For example, failure to cooperate with the Director's investigation warrants discipline aside from the underlying violation. *In re Neill,* 486 N.W.2d 150, 151 (Minn.1992) (noting that failure to cooperate, without more, warrants suspension). Discipline is appropriate when a lawyer fails to pay a professionally related judgment against him. *Stanbury,* 561 N.W.2d at 510–11 (imposing a public reprimand). Failure to comply with Rule 26, RLPR, is also a basis for imposing discipline. *De Rycke,* 707 N.W.2d at 375. Finally, we have said that previous discipline for similar misconduct is a factor warranting more severe sanctions. *See Rhodes,* 740 N.W.2d at 580. Swokowski has been previously sanctioned for failure to cooperate with the Director's investigation and for client neglect. *See Swokowski,* 767 N.W.2d at 3–5.

*Harm to the Public and the Legal Profession*

■■■■ In evaluating the impact of the harm caused by professional misconduct to the public and the profession, we consider " 'the number of clients harmed [and] the extent of the clients' injuries.' " *In re Coleman,* 793 N.W.2d 296, (Minn.2011) (quoting *In re Randall,* 562 N.W.2d 679, 683 (Minn.1997)). Swokowski's actions caused financial harm to J.F., L.A., R.C., and C.B. All of the clients discussed in the Director's petition for disciplinary action suffered delay in the resolution of their cases and some had to hire alternative counsel. Although there is no allegation that the delay negatively impacted any client's legal position, this does not render Swokowski's client neglect harmless. *See In re Albrecht,* 779 N.W.2d 530, 541 (Minn.2010) ("[R]egardless of whether an attorney's misconduct 'jeopardize[s] the client's position with respect to a claim, a lawyer's failure to communicate with the client and misrepresentations regarding the status of a pending case are intensely frustrating to the client....' ") (quoting *Redburn,* 746 N.W.2d at 338).

■■■■ We have also held that professional misconduct of the kind committed by Swokowski damages the profession as well as the public. "Misappropriation of client funds, by its very nature, harms not only the specific client, but also the public at large, the legal profession, and the administration of justice." *In re Ruttger,* 566 N.W.2d 327, 331 (Minn.1997). "To maintain the society's confidence in the legal profession, individuals must be able to trust that their attorneys will act competently and communicate fully with them." *In re Fett,* 790 N.W.2d 840, 851 (Minn.2010) (citing *Redburn,* 746 N.W.2d at 338). Swokowski's conduct was not only

harmful to his clients, but to the legal profession as well.

Swokowski committed forgery and misappropriated client funds. He engaged in a pattern of neglecting client matters, failing to communicate with clients, and failing to return client property. He failed to pay a law-related judgment against him. After being disciplined, he failed to notify clients of his suspension. Finally, he failed to cooperate in the Director's investigation. We conclude that the appropriate sanction for Swokowski's misconduct is disbarment. Therefore, we order that, upon the filing of this opinion, Jay Gerard Swokowski is disbarred from the practice of law in the State of Minnesota.

Disbarred.