STATE OF MINNESOTA

IN SUPREME COURT

A24-1737

Original Jurisdiction

Per Curiam

In re Petition for Disciplinary Action against
Ana L. Pena, a Minnesota Attorney,
Registration No. 0386459.

Filed: July 16, 2025
Office of Appellate Courts

_____

Susan M. Humiston, Director, Karin K. Ciano, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Ana L. Pena, San Antonio, Texas, pro se.

_____

S Y L L A B U S

Disbarment is warranted where respondent misappropriated more than $94,000 from her employer while suspended for having previously misappropriated client funds.

Disbarred.

O P I N I O N

PER CURIAM.

On May 6, 2020, we indefinitely suspended respondent Ana L. Pena without the right to petition for reinstatement for 18 months. We did so for, among other violations, misappropriation of client funds. Pena never petitioned for reinstatement. On October 7, 2024, the Director of the Minnesota Office of Lawyers Professional Responsibility (the

1

Director) filed a second Petition for Disciplinary Action against Pena alleging two counts. First, the Director alleged that Pena committed theft of over $94,000 from her Texas-based law firm and one of its partners, constituting fraud and dishonesty in violation of Rule 8.04(a)(3), Texas Disciplinary Rules of Professional Conduct (TDRPC). Second, the Director alleged that Pena's failure to cooperate with the Director's investigation violated Rule 8.1(b), Minnesota Rules of Professional Conduct (MRPC), and Rule 25, Rules on Lawyers Professional Responsibility (RLPR). Pena did not respond to this petition. By an order filed December 13, 2024, we deemed all allegations in the petition admitted. All that remains for this court to decide is what discipline to impose. The Director argues for disbarment. We agree, and we therefore disbar Pena.

## FACTS

On September 9, 2024, the Director served Pena with a petition alleging unprofessional conduct and seeking disbarment, pursuant to Rule 9(a)(l), RLPR. Pena failed to serve or file an answer. By failing to respond, Pena has admitted to the facts alleged in the petition—that she engaged in conduct involving fraud and dishonesty in violation of Rule 8.04(a)(3), TDRPC, and failed to cooperate with a disciplinary investigation in violation of Rule 8.l(b), MRPC, and Rule 25, RLPR. The facts below are derived from the facts deemed admitted in the petition. Rule 13(b), RLPR ("If the respondent fails to file an answer within the time provided or any extension of time this Court may grant, the allegations shall be deemed admitted . . . .").

Pena was admitted to practice law in Minnesota on September 19, 2006. The Director noted at oral argument that Pena had been using her license to practice

2

immigration law in Texas.[1]  On May 6, 2020, pursuant to a stipulation for discipline, we indefinitely suspended her Minnesota license without the right to petition for reinstatement for 18 months.  We suspended Pena for misconduct she committed in Texas, specifically, "failure to safeguard client funds, misappropriation of client funds, and neglect of client matters, in violation of Rules 1.01(b)(1), 8.04(a)(3), and 1.14(a), Texas Disciplinary Rules of Professional Conduct."  *In re Garza Peña*, 942 N.W.2d 751, 751 (Minn. 2020) (order).  Because Pena's misconduct occurred in and had predominant effects in Texas, the discipline we imposed in Minnesota was based on her violations of the TDRPC.  *Id.*; Minn. R. Prof. Conduct 8.5(b) (stating that for conduct other than "conduct in connection with a matter pending before a tribunal," the rules of professional conduct "of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction" shall be applied in a disciplinary proceeding).  Since Pena's 2020 suspension, she has not petitioned for reinstatement and remains suspended.

Pena did not inform her employer, the Quintana and Barajas law firm (the Firm) in San Antonio, Texas, that her Minnesota license had been suspended.  The Firm discovered her suspension when one of the Firm's other employees opened a letter from the Director addressed to Pena.  Even so, the Firm decided to keep Pena employed in a non-lawyer position because the Firm believed that the conduct underlying her suspension was due to

---

[1]    According to the Director at oral argument, Pena practiced immigration law.  Her Minnesota license was sufficient to practice immigration law in Texas even though she was not licensed in Texas.

3

a set of unusual circumstances and unlikely to reoccur. One of Pena's responsibilities in her non-lawyer position with the Firm was to manage the Firm's payroll.

Pena subsequently misappropriated money from the Firm and one of the Firm's partners in four ways. First, while overseeing the Firm's pay schedule transition from twice a month (semi-monthly) to every other Friday (biweekly), Pena deliberately failed to adjust her own compensation schedule. This resulted in her receiving 74 overpayments from January 2021 through November 2023. Pena did not report or repay these overpayments.

Second, Pena misappropriated money from the Firm by secretly adjusting her own base wage rate to increase her compensation. These increases ranged from $128.21 to $3,366.67 per pay period, and also cost the Firm $1,630.71 in matching funds to Pena's retirement account.

Third, Pena misappropriated Firm money through pay advances. From October 7, 2022, through November 3, 2023, Pena received pay advances totaling $31,200 by falsely representing that she would repay the advances. Pena did not repay any of this money.

Finally, Pena misappropriated money from one of the Firm's partners. In July 2023, Pena asked the partner for a pay advance of $7,200, but he declined because the requested advance exceeded Pena's salary for the pay period. Pena then represented that, if the partner would personally loan her the money, she would repay him within four weeks upon securing a loan from her retirement account. He loaned her the money. Pena never

intended to repay this loan,[2] and the partner relied on her misrepresentation. Despite his requests, Pena never repaid him.

In total, Pena misappropriated $87,597.18 from the Firm between January 2021 through November 2023, and an additional $7,200 from the Firm's partner in July 2023, for a total sum of $94,797.18. On November 17, 2023, in a meeting with a human resources investigator, Pena admitted to these misappropriations, signed over her final paycheck to the Firm, and was terminated. A criminal investigation of Pena is in progress in Texas.

Because Pena had not maintained her current contact information in the Minnesota Attorney Registration System, which still listed Pena's contact information as the Firm's address and her Firm e-mail address, the Director sent notice of the investigation to Pena at the Firm's address requesting a response within 14 days. The Director's investigation revealed numerous other street addresses, e-mail addresses, and phone numbers associated with Pena. The Director sent multiple notices requesting a response using each of these methods of contact. At the time of oral argument, Pena had not responded to any of the Director's communications.

On September 9, 2024, the Director served Pena with a petition alleging the above unprofessional conduct and seeking disbarment. Pena did not respond to the petition.

---

[2] Pena did not participate in the investigation, but the petition alleges that Pena "never intended to repay the $7,200 loan." Because Pena did not respond to the petition, this fact is deemed admitted. Rule 13(b), RLPR.

5

**ANALYSIS**

Pena was previously licensed to practice law in Minnesota but was practicing in Texas at the time the conduct here occurred. While both Texas and Minnesota professional responsibility rules are relevant to whether misconduct occurred, we apply Minnesota law when considering the discipline to impose. *See In re Overboe*, 745 N.W.2d 852, 866–67 (Minn. 2008) (applying Minnesota law to determine the discipline to impose after concluding that the Minnesota and North Dakota Rules of Professional Conduct applied to a lawyer's conduct); Rule 15(a), RLPR. "The purpose of discipline for professional misconduct is not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010) (citing *In re Plummer*, 725 N.W.2d 96, 98 (Minn. 2006)). In assessing the appropriate sanction in an attorney discipline matter, "we consider four factors: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007). "Because we strive for consistency in attorney discipline, we look to similar cases for guidance in setting the proper sanction." *In re Rooney*, 709 N.W.2d 263, 268 (Minn. 2006).

The nature of Pena's misconduct is the misappropriation of over $94,000 from a law firm and one of its partners, which was dishonest and fraudulent conduct in violation of Rule 8.04(a)(3), TDRPC (analogous to Minn. R. Prof. Conduct 8.4(c)). The petition does not allege that Pena's misconduct amounted to a criminal act in violation of Rule

6

8.04(a)(2), TDRPC (analogous to Minn. R. Prof. Conduct 8.4(b)).[3]  When a violation of Minn. R. Prof. Conduct 8.4(c) is proven, but there is no allegation that the misconduct amounts to a criminal act under Rule 8.4(b), we have often imposed suspension.  *See, e.g.*, *In re Koble*, 827 N.W.2d 765, 765 (Minn. 2013) (order) (imposing a 30-day suspension for misappropriating $1,300 in fees belonging to attorney's law firm and improperly attempting to withdraw from representation of a client); *In re McFarland*, 652 N.W.2d 536, 536 (Minn. 2002) (order) (imposing a 30-day suspension on an attorney who misappropriated approximately $25,000 in client fees from his law firm).  The nature of this case, however, is more serious than our previous Rule 8.4(b) cases because the misappropriation here involved a significantly greater amount.

In addition to the misappropriation, Pena failed to cooperate with the disciplinary investigation.  "We have long recognized that it is incumbent upon an attorney to cooperate with disciplinary authorities in their investigation and resolution of complaints against [them]."  *In re Schulte*, 869 N.W.2d 674, 678 (Minn. 2015) (alteration added) (quoting *In re Cartwright*, 282 N.W.2d 548, 551 (Minn. 1979)) (internal quotation marks omitted).  "[N]oncooperation with the disciplinary process, by itself, may warrant indefinite suspension and, when it exists in connection with other misconduct, noncooperation

---

[3]     There is an argument that Pena's conduct amounts to felony theft by swindle under Minn. Stat. § 609.52, subd. 2(a)(3), (4) (2024).  The commission of felony theft by swindle typically constitutes a violation of Minn. R. Prof. Conduct 8.4(b) (the equivalent of Rule 8.04(a)(2)), TDRPC, and often results in disbarment.  *See, e.g.*, *In re Brost*, 850 N.W.2d 699 (Minn. 2014).  We need not determine whether Pena's misconduct amounts to felony theft by swindle because we conclude that the appropriate discipline for Pena is disbarment based on the other factors present in this case.

7

increases the severity of the disciplinary sanction." *Id.* (alteration in original) (quoting *Nelson*, 733 N.W.2d at 464) (internal quotation marks omitted). Pena's failure to cooperate with the disciplinary investigation increases the serious nature of her misconduct.

"[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004). "[W]e distinguish 'a brief lapse in judgment or a single, isolated incident' of misconduct from multiple instances of misconduct 'occurring over a substantial amount of time.' " *In re Ulanowski*, 834 N.W.2d 697, 703 (Minn. 2013) (quoting *In re Fairbairn*, 802 N.W.2d 734, 743 (Minn. 2011)). Here, Pena's actions are neither isolated incidents nor the result of a brief lapse in judgment. Pena systematically used her position within the Firm to overpay herself for over two years, and she repeatedly made false statements to the Firm to obtain pay advances. Pena was also charged with, and is deemed to have admitted to, failing to participate in the disciplinary investigation. This serves as yet another violation adding to the cumulative weight of her violations. *In re Taplin*, 837 N.W.2d 306, 312 (Minn. 2013).

While Pena's theft from the Firm did not harm any clients, we have said that "[m]isappropriation of any kind, by its very nature, harms the public at large." *Fairbairn*, 802 N.W.2d at 743. Pena's misappropriation of over $94,000 harmed the Firm, the Firm's partner, and the public at large, eroding public confidence in the legal profession. Further, we have held that an attorney's failure to cooperate with a disciplinary investigation also harms the public and the legal profession. *In re Brost*, 850 N.W.2d 699, 705 (Minn. 2014). Failing to cooperate with a disciplinary investigation " 'harm[s] the legal profession by

undermining the integrity of the attorney disciplinary system.' " *Id.* at 705 (alteration in original) (quoting *Ulanowski*, 834 N.W.2d at 703). "Failure to cooperate also 'weakens the public's perception of the legal profession's ability to self-regulate.' " *Id.* (quoting *In re Pitera*, 827 N.W.2d 207, 212 (Minn. 2013)). Pena's failure to comply with the disciplinary proceeding "undermin[es] the integrity of the attorney disciplinary system" in addition to the harm caused by her misappropriation. *Id.* (quoting *Ulanowski*, 834 N.W.2d at 703).

We next consider mitigating and aggravating factors related to Pena's conduct. Because Pena did not respond to the disciplinary petition, we do not consider any mitigating factors that she might have raised. *See In re Matson*, 889 N.W.2d 17, 25 (Minn. 2017) (concluding that we could not consider mitigating factors an attorney might have raised when the attorney never responded to a disciplinary petition). Here, Pena's disciplinary history and her commission of misconduct while suspended are both aggravating factors.

"After a disciplinary proceeding, we expect a renewed commitment to comprehensive ethical and professional behavior." *In re Weems*, 540 N.W.2d 305, 309 (Minn. 1995). "Accordingly, we consider a lawyer's prior discipline and professional misconduct when determining the appropriate discipline for new misconduct." *In re Rhodes*, 740 N.W.2d 574, 580 (Minn. 2007). "Prior disciplinary history 'weighs heavily' if the prior discipline was for similar misconduct." *In re Hulstrand*, 910 N.W.2d 436, 444 (Minn. 2018) (quoting *In re Tigue*, 900 N.W.2d 424, 432 (Minn. 2017)). Pena was disciplined in 2020 for similar misconduct: failure to safeguard client funds and

misappropriation of client funds. Though this case deals with misappropriation of firm funds, rather than client funds, the conduct is similar. This history is therefore an aggravating factor that "weighs heavily" against Pena.

Finally, an attorney falls short of showing a renewed commitment to the ethical practice of law when they violate the rules of professional responsibility while suspended. *In re De Rycke*, 707 N.W.2d 370, 375 (Minn. 2006). We suspended Pena in 2020, and she has never petitioned for reinstatement. Pena's decision to engage in additional misconduct while suspended is another aggravating factor. *See Brost*, 850 N.W.2d at 705 (concluding that an attorney's similar misconduct while suspended was an aggravating factor).

\* \* \*

Based on the substantial amount of money misappropriated, the length of time during which she engaged in the misappropriation, the harm to the public and the legal profession, and the aggravating factors present, we hold that the appropriate sanction for Pena's misconduct is disbarment.

## CONCLUSION

For the foregoing reasons, respondent Ana L. Pena is disbarred from the practice of law in the State of Minnesota, effective on the date of this opinion. Respondent must comply with Rule 26, RLPR (requiring notice to clients, opposing counsel, and tribunals), and must pay $900 in costs under Rule 24, RLPR.

Disbarred.